UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

XIAOLI HUANG,
Plaintiff,

v.

BANK OF AMERICA, N.A., et al.,
Defendants.

Case No. 26-cv-06497-NW

**ORDER RE MOTIONS TO COMPEL ARBITRATION**

Re: ECF Nos. 14, 15

Between April and September of 2025, self-represented plaintiff Xiaoli Huang ("Plaintiff") was the victim of a fraud scheme resulting in the loss of approximately $2,949,000 through a series of deceptively-induced wire transfers. ECF No. 1 at 2. Plaintiff brings this action against Defendants Bank of America, N.A. ("BANA"), Charles Schwab & Co., Inc. ("Charles Schwab"), and JPMorgan Chase Bank, N.A., alleging that they failed to take reasonable steps to stop the fraud. *Id.* at 1–2. She brings claims for negligence, aiding and abetting fraud, and conversion against all Defendants. *Id.* at 13–15. Before the Court are Charles Schwab's and BANA's motions to compel arbitration based on arbitration clauses included in Plaintiff's account agreements. ECF Nos. 14–15. For the following reasons, the Court GRANTS Charles Schwab's motion to compel arbitration and DENIES BANA's motion to compel arbitration, and STAYS the claims as to Charles Schwab.[1]

## I. RELVANT BACKGROUND[2]

Plaintiff opened a TD Ameritrade brokerage account in October 2020. *See* ECF No. 14-3;

[1] Plaintiff's claims against BANA and JPMorgan Chase Bank, N.A. are not stayed at this time. *See, infra*, § IV.

[2] The facts are drawn from Plaintiff's complaint, where they appear undisputed, and from the

United States District Court
Northern District of California

ECF No. 17 at 1. The client agreement to Plaintiff's TD Ameritrade account included an arbitration clause, to which she agreed by electronically signing: "I, Xiaoli Huang, agree to the terms of the Client Agreement" when she submitted her application. ECF No. 14-3 at 3–4; ECF No. 14-4 at 9. In 2024, following Charles Schwab's acquisition of TD Ameritrade, the account was transitioned to Charles Schwab. *See* ECF No. 14-7; ECF No. 17 at 1. The email informing Plaintiff of her account transition in 2024 included a hyperlink directing her to a new "Schwab Account Agreement," and that agreement also included an arbitration provision. ECF No. 14-7; ECF No. 14-8 at 40–42.

Plaintiff opened two BANA accounts (a checking account and a savings account) on November 2, 2020. ECF No. 15-2 at 2–3. Neither account included an arbitration provision at the time, but each included that BANA "may change these documents at any time by adding new terms, or deleting or amending existing terms." *Id.* In March 2026, BANA amended its account agreements to add an arbitration provision, and informed Plaintiff of this change via her monthly account statement. *See* ECF No. 15-4 at 6. Plaintiff had 60 days to opt out of the arbitration provision by contacting BANA, but she did not do so. ECF No. 18 at 1–2.

The first of the wire-transfers at the heart of this action was initiated on April 9, 2025; the last was initiated on September 25, 2025. *See* ECF No. 1 at 5 ("Fund Flow" Chart). Plaintiff reported the fraud to Charles Schwab on October 29, 2025, and reported it to BANA on November 5, 2025. *Id.* at 6.

## II. LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), a written arbitration provision is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). On a motion to compel arbitration, if the Court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to

---

evidence submitted by the parties as if on summary judgment. *See Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) ("The summary judgment standard is appropriate because the district court's order compelling arbitration 'is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.'").

proceed to arbitration in accordance with the terms of the agreement." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). In other words, the only issues before the Court are (1) contract formation and defenses in accordance with state law, and (2) whether the plaintiff's claims are covered by the arbitration clause. Here, California contract law governs issues relating to Plaintiff's account agreements. *See Castro v. JPMorgan Chase Bank, N.A.*, No. 14-cv-01539-NC, 2014 WL 2959509, at *2 (N.D. Cal. June 30, 2014) ("The law of the place where a contract was made determines questions related to its validity.")

"The party seeking to compel arbitration bears the burden to prove the existence of a valid agreement by a preponderance of the evidence." *Alkutkar v. Bumble Inc.*, No. 22-cv-00422-PJH, 2022 WL 16973253, at *1 (N.D. Cal. Nov. 16, 2022) (internal quotation marks and citations omitted). And the Court evaluates that evidence in accordance with "the summary judgment standard," because "compelling arbitration is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Hansen*, 1 F.4th at 670.

## III. DISCUSSION

### A. The Court GRANTS Charles Schwab's Motion to Compel Arbitration

Charles Schwab argues that under either the TD Ameritrade agreement or the post-2024 acquisition agreement, Plaintiff's claims are subject to a binding arbitration provision. *See* ECF No. 14; ECF No. 23. Plaintiff's opposition largely seeks to remind the Court of its role in reviewing the documents submitted by Charles Schwab and examining whether there is a genuine dispute as to any issue. *See, generally*, ECF No. 17 at 2. Construing her opposition liberally, as the Court must with regard to self-represented litigants, at most she disputes whether the post-acquisition agreement is binding, pointing to issues with notice and her failure to "actively trade securities" using her Charles Schwab account post-transition. ECF No. 17 at 1–2, 3.

But setting that issue aside, Plaintiff does not dispute that her TD Ameritrade account—from its inception—was subject to an arbitration provision to which she agreed.[3] That arbitration

[3] In a motion for leave to file supplemental materials, Plaintiff sought to submit a declaration disputing certain ancillary facts relating to this exhibit. ECF No. 27. The Court denied the motion

provision squarely covers the claims at issue. *See* ECF No. 14-4 at 9 (mandating arbitration of all claims except for claims that are "ineligible for arbitration" and class actions). And it extends to Charles Schwab as TD Ameritrade's successor. *See id.* at 2.

Accordingly, Charles Schwab's motion to compel arbitration is GRANTED.

**B. The Court DENIES BANA's Motion to Compel Arbitration**

Unlike Charles Schwab, BANA does not contend that Plaintiff's BANA accounts were subject to an arbitration agreement at the outset. Rather, BANA argues that they are covered by a binding arbitration agreement introduced in March 2026, only three months before Plaintiff filed this action. ECF No. 15 at 18–19. In opposition, Plaintiff argues that the "Court must determine whether the amendment procedure on which BANA relies established Plaintiff's assent to the later-added arbitration agreement." ECF No. 18 at 4. Plaintiff frames this as an issue of contract-formation, explaining that a California court of appeal rejected "BANA's attempt to use change-in-terms provisions to add dispute-resolution provisions to existing customer agreements" in a prior case. *Id.* (citing *Badie v. Bank of America*, 67 Cal. App. 4th 779 (1998) (acknowledging that the language there "was not identical to Plaintiff's 2020 signature cards" because it did not include the ability to add "new terms")). But Plaintiff also argues that "BANA drafted the new provision broadly to purport to cover claims that arose in the past," and that the "breadth of the language" suggests no contract was agreed to. *Id.* at 5. The thrust of Plaintiff's argument, although not stated in these words, is that a broad provision added unilaterally by BANA that purports to cover a claim that accrued prior to the provision's addition is unenforceable. The Court agrees with Plaintiff.

As the Ninth Circuit explained in *Heckman v. Live Nation Entertainment, Inc.*, an interaction between a "change of terms" clause and arbitration provision may result in procedural unconscionability. 120 F.4th 670, 683 (9th Cir. 2024), *cert. denied,* 146 S. Ct. 96 (2025). Specifically, "an arbitration contract containing a modification provision is illusory if . . . a

---

as improper but, even if the Court considered it, Plaintiff did not dispute that she opened the TD Ameritrade account in October 2020 or that the electronic record submitted by Charles Schwab was authentic. *See id.* The supplemental declaration would not change the Court's ruling.

contract change[ ] applies to claims that have accrued or are known." *Id.* at 682 (quoting *Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425 (2012)). Thus, where arbitration terms "apply to any dispute, claim or controversy . . . irrespective of when that dispute, claim, or controversy arose," and were added by a party in accordance with a contract that "permit[s] unilateral modification of the Terms without prior notice . . . at any time," the resulting provision is procedurally unconscionable. *Id.* at 682–83; *cf. also Smith v. JPMorgan Chase Bank, N.A.*, No. 24-cv-1287 JLS (DTF), 2025 WL 1554370, at *11 (S.D. Cal. June 2, 2025) (explaining that *Heckman* relied on the confluence of these two terms, but that if the arbitration provision is not clearly retroactive, the "covenant of good faith and fair dealing saves the Arbitration Agreement from being illusory" because a "unilateral modification provision that is silent as to whether contract changes apply to claims, accrued or known, is impliedly restricted by the covenant so that changes do not apply to such claims.").

Here, the signature cards provide that BANA "may change these documents at any time by adding new terms, or deleting or amending existing terms," without any notice provision. ECF No. 15-2 at 2–3. And the arbitration provision added by BANA clearly purports to "appl[y] to any and all [covered] claims or disputed factual or legal issues, whether they arose in the past, may currently exist, or may arise in the future." ECF No. 15-3. The arbitration agreement is thus illusory and procedurally unconscionable as to Plaintiff's claims.

Accordingly, BANA's motion to compel arbitration is DENIED.

## IV. CONCLUSION

For the foregoing reasons, Charles Schwab's motion to compel arbitration is GRANTED and BANA's motion to compel arbitration is DENIED.

Plaintiff's claims as to Charles Schwab are STAYED pending arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).

The Court SETS a status conference as to Plaintiff, BANA, and JPMorgan Chase Bank, N.A. for January 6, 2027, immediately following the hearing on JPMorgan Chase's pending motion to dismiss. At the status conference, the parties should be prepared to discuss whether a stay of the entire case is warranted. *See, e.g.*, *Franklin-Chomas v. Internet Referral Servs., LLC*,

No. 24-cv-02320-L-DDL, 2025 WL 2917158, at *6 (S.D. Cal. Oct. 14, 2025) ) (where the court held that some, but not all, defendants could "enforce the arbitration agreement, . . . [it retained] discretionary authority to stay remaining claims pending the outcome of an arbitration proceeding."); *Tulare Golf Course, LLC v. Vantage Tag, Inc.*, No. 21-cv-00505-JLT (SKO), 2023 WL 2587994, at *10 (E.D. Cal. Mar. 21, 2023) (staying the case as against non-compelled parties because "the arbitration of claims against one party will likely resolve factual disputes 'coextensive with claims against nonparties to that arbitration agreement.'").

**IT IS SO ORDERED.**

Dated: October 30, 2026

Noël Wise
United States District Judge

United States District Court
Northern District of California